IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LAREY DOUGLAS BROWN, #1683629 | § | |
| VS. | § | CIVIL ACTION NO. 6:14cv540 |
| DIRECTOR, TDCJ-CID | § | |

<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE</u>

Petitioner Larey Douglas Brown, proceeding *pro se* and *in forma pauperis*, filed this application for the writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his conviction. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Brown is serving a sentence of thirty-seven years' imprisonment for three counts of aggravated sexual assault with a deadly weapon, one count of aggravated kidnapping with a deadly weapon, and one count of possession of a firearm by a convicted felon. The State alleged two prior convictions for the enhancement of punishment.

The Twelfth Court of Criminal Appeals summarized the facts as follows:

At trial, the complaining witness testified that she has been trying to end her relationship with Appellant. However, she agreed to spend the night at Appellant's trailer after he repeatedly asked her to come see the renovation he was doing on the trailer. She agreed to accompany him, in part, she testified, because she thought he had some drugs or would get some and also because she felt sorry for him because his son had recently, and tragically, drowned. The two did not get drugs that evening, but they did eat dinner at the trailer and, later, engaged in sexual intercourse. The complaining witness went to sleep. She testified that she awoke from a bad dream and found Appellant in the living portion of the trailer with a rifle. She went back to sleep.

1

> In the morning, Appellant wanted to have sex again. The witness refused, and Appellant beat her with a rifle and his hands and sexually assaulted her. Later that morning, she fled to a neighboring trailer, but Appellant caught up with her and forced her into his truck. He drove her to a lake. At the lake, Appellant beat her and told her that she was going to die. Eventually, however, he relented and took her to the home of a mutual friend. The witness was badly injured and, eventually, another friend took her to the hospital. The hospital personnel alerted the police, and the police began an investigation that led to these charges.

*See Brown v. State*, No. 12-11-0027-CR, 2011 WL 3915663 (Tex.App.—Tyler 2011, no pet.).

**II. Brown's Federal Habeas Claims**

In his petition, Brown argued that (1) he was incompetent to stand trial; (2) the trial court erred by failing to examine his competency, for relying on an old competency determination, for admitting extraneous offense evidence; (3) the State committed prosecutorial misconduct by intentionally utilizing false evidence; and (4) he is actually innocent. Furthermore, he alleged that trial counsel was ineffective for (5) failing to remove a biased judge and juror; (6) failing to object; (7) failing to interview and subpoena witnesses; (8) failing to investigate; (9) failing to have him evaluated for competency; (10) failing to consult with him; (11) failing to impeach the victim; (12) failing to obtain a second opinion and psychiatric evaluation; (13) failing to prevent a void enhancement from being used; and (14) failing to present a defense. As for appellate counsel, Brown stated that he was ineffective for filing an inadequate brief and for failing to raise grounds on direct appeal.

After a review of the pleadings and the state court record, the Magistrate Judge issued a Report recommending that Brown's petition for habeas corpus be denied with prejudice. (Dkt. #33). Brown has filed objections. (Dkt. #40).

**III. Standard of Review**

*1. Federal Habeas Review*

The role of federal courts in reviewing habeas corpus petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Furthermore, federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed a number of habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal habeas review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe

that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the high deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

*2. Ineffective Assistance of Counsel*

To show that trial counsel was ineffective, Brown must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016). The right to effective counsel does not guarantee error-free or perfect counsel. *See U.S. v. Freeman*, 818 F.3d 175, 178 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Importantly, the petitioner alleging ineffective assistance must show both deficient performance and prejudice. *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted). Given the already highly deferential standard under the AEDPA, establishing a state court's application whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86,

105 (2011); *see also Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013) ("Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

**IV. Brown's Objections and Discussion**

*A. Competency*

Brown initially maintained that the trial court failed to examine him for competency. He also argued that counsel was ineffective for failing to request a competency evaluation. The Magistrate Judge found that Brown failed to demonstrate that an investigation into his purported "extreme post-traumatic stress syndrome" would have altered the outcome of the trial. She highlighted that a doctor evaluated Brown prior to trial and indicated that no evidence existed to suggest that he suffered from post-traumatic stress disorder, but rather explained that his lengthy use of methamphetamines impacted his mental health. Brown now objects, arguing that he never received a competency evaluation or a psychiatric evaluation.

The Magistrate Judge is correct. As the Report described, a defendant is competent to stand trial when he or she has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788 (1960); *see also Lahood v. Davis*, 653 Fed.App'x. 253, 257 (5th Cir. 2016) (nothing that a defendant is presumed competent to stand trial unless otherwise proven by a preponderance of the evidence).

A trial court is required to, on its own motion, impanel a jury and conduct a sanity hearing if evidence raises a "bona fide doubt," which is characterizes as a "real, substantial and legitimate doubt," as to the defendant's competency to stand trial. *See Pate v. Robinson*, 383 U.S. 375, 385

5

(1966); *see also Pedrero v. Wainwright*, 590 F.2d 1383, 1388 (5th Cir. 1979) ("A habeas petitioner who contends that he was entitled to a competency hearing must show that there were matters known to the trial court that raised at that time a "real, substantial, and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel.").

In determining whether a competency hearing is required, courts are to examine the existence of history of irrational behavior, a defendant's bearing and demeanor at the time of trial, and prior medical opinions. *See Enriquez v. Procunier*, 752 F.2d 111, 114 (5th Cir. 1984); *see also Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973), subsequent opinion, 536 F.2d 1051 (5th Cir. 1976) ("Courts in habeas proceedings should not consider claims of mental incompetency to stand trial where the facts are not sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner....").

Here, as the Report indicated, Brown was evaluated for competency in January 2009, and found competent. Subsequently, Dr. Self evaluated Brown's mental state in August 2009. In his September 2009 report, Dr. Self concluded that—in his opinion, held with reasonable psychiatric certainty—Brown was not insane as defined by Texas law at the time of the charged offenses.

Dr. Self also remarked that while Brown has a documented history of psychiatric treatment for severe mental disease, his heavy use of methamphetamines impacted his mental health in such a way that he suffers from a mood disorder. He highlighted that Brown's attempt to "cover up" the victim's injuries indicates his ability to understand right from wrong, thereby negating his insanity contentions. Moreover, Dr. Self stressed that Brown exuded organized, coherent, and clear thoughts but showed no signs of delusions. Brown was "very well aware" of his mental illness, his need for medication, and the effects of his prolonged methamphetamine use.

The Magistrate Judge properly concluded that nothing in the record provided a need to conduct an additional competency evaluation. *See Godinez v. Moran*, 509 U.S. 389, 401 n.13 (1993) (explaining that a court is only required to hold competency evaluations only if it has reason to believe competency is an issue).

To the extent that Brown maintains that he became incompetent only after his first evaluation—thus providing the court evidence to suggest competency was an issue—Dr. Self's evaluation refutes the claim. Approximately three weeks prior to jury selection, Dr. Self evaluated Brown's mental state; he found that Brown exhibited rational and coherent thoughts, showing no signs of delusions. He also noted that Brown was cognizant of his mental health problems, which stemmed from his lengthy drug use. Accordingly, given that Dr. Self's evaluation indicates that there was no legitimate doubt that Brown did not have a rational understanding of the proceedings against him or that he did not have the ability to consult with his lawyer almost immediately before trial, there was no need for the trial court to hold a competency hearing.

With respect to counsel's alleged failure to request a competency hearing, it must be noted that counsel cannot be constitutionally ineffective for failing to raise and argue a meritless issue. Having found no legitimate or meritorious basis to request a competency hearing, counsel cannot be ineffective for failing to do so. *See Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (explaining that counsel cannot be constitutionally ineffective for failing to raise a meritless argument).

### B. Claims of Ineffective Assistance of Counsel—Trial and Appellate Counsel

Brown initially maintained that trial counsel was ineffective for a variety of reasons. The Magistrate Judge concluded that he failed to demonstrate that counsel was ineffective because he presented nothing other than conclusory allegations without argument or legal citations. While

7

Brown's objection is difficult to decipher, it seems that he is rearguing and elaborating on his initial federal habeas claims. A review of Brown's fourteen-page objection shows his attempt to refute Dr. Self's evaluation, argue the sufficiency of the evidence, state that the means to enhance his punishment was illegal, and highlight the State habeas court's failure to elaborate on the merits of certain claims. Rather than respond to the Magistrate Judge's conclusion that his claims were conclusory and failed to overcome the AEDPA's burden, Brown chose to elaborate on the merits of his claim.

Turning to his complaint concerning his appellate counsel, Brown initially argued that his appellate counsel was ineffective for failing to raise issues on appeal and for filing an inadequate brief. The Magistrate Judge found that Brown failed to specify what specific issues appellate counsel should have raised in the initial brief and, crucially, the state habeas court's rejection of this claim results in Brown's failure to demonstrate prejudice. Brown objects, maintaining that the state habeas court "never made any findings of fact or conclusions of law on this issue."

The Magistrate Judge properly found that Brown failed to demonstrate that the state habeas court's rejection of the claim was unreasonable and that he could not show prejudice. First and foremost, even though the state habeas court did not specifically comment on these claims, the denial/rejection of them compels the rejection of this claim of ineffectiveness—particularly because Brown cannot demonstrate that he was prejudiced by appellate counsel's failure. *See, e.g.*, *Vega v. Johnson*, 149 F.3d 354, 362 (5th Cir. 1998) ("... given the Court of Criminal Appeals' finding that the estoppel issue was without merit, Vega's counsel could hardly have committed an egregious error in failing to make the argument before the trial court."); *Cantu v. Collins*, 967 F.2d 1006, 1017 (5th Cir. 1992) (where issues petitioner faults appellate counsel for failing to raise on direct appeal were rejected by state and federal habeas courts, claims of appellate attorney error

8

was "frivolous.").

Here, the state habeas court rejected Brown's claims of ineffective assistance of appellate counsel by denying the entire petition. The court's denial demonstrates that Brown cannot demonstrate that the outcome would have been different had counsel filed an adequate brief—especially considering how, at the very least, in order for the state habeas court to considering the underlying ineffectiveness claim, it presumably analyzed whether Brown could establish prejudice.

*C. Extraneous Evidence*

Brown originally contended that the trial court erred in admitting evidence of other wrongs or crimes to prove his character. He took issue with photographs of injuries to the victim that predated the underlying offenses. The Magistrate Judge found that Brown failed to demonstrate any error and—even if he had shown that the trial court erred in admitting the photographs—that the errors rendered his trial fundamentally unfair. Moreover, the Magistrate Judge found that the intermediate appellate court already considered and rejected this claim. Brown now objects, stating that the victim's previous injuries were "so remote in time from the aggravated assault allegation," which should have promoted counsel to object.

The Magistrate Judge's findings and conclusions are proper. As mentioned in the Report, the Twelfth Court of Criminal Appeals in Texas specifically considered and rejected these arguments, finding that the victim identified the photographs of her face. Because the victim authenticated the photographs by explaining that they accurately represented her face and injuries, the appellate court found that the court did not error in admitting the photographs. Brown does not identify how these findings and conclusions are unreasonable; instead, he merely notes that they were inflammatory, prejudicial, and not "strong enough."

9

### D. Prosecutorial Misconduct

Brown maintained that the prosecutor knowingly presented false evidence through false reports, false pictures, and false witness testimony regarding previous injuries to the victim in order to specifically mislead the jury. The Magistrate Judge found that Brown failed to show that any report, photograph, or testimony was false and that the state habeas courts denial of these claims were unreasonable. Brown now objects, claiming that the prosecutor introduced misleading evidence that was insufficient.

The Magistrate Judge properly found that Brown failed to show that the state habeas court's adjudication of this claim was unreasonable. As the Report explained, the prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. U.S.*, 405 U.S. 150, 154 (1972). In order to demonstrate a due process violation in such an instance, the petitioner must show that (1) the testimony in question was actually false; (2) that the prosecutor was aware of the perjury; and (3) that the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

Here, Brown cannot demonstrate that any of this evidence was false. As explained above, the victim authenticated photographs of her injuries. Moreover, he has not provided a single piece of evidence to suggest that the State knowingly elicited false testimony or introduced false photographs. Because a conclusory allegation does not raise a constitutional issue in a federal habeas proceeding, the Magistrate Judge's findings are correct. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

*E. Actual Innocence*

In his final claim, Brown maintains that he is actually innocent of the offenses. The Magistrate Judge found that because Brown failed to show an independent constitutional violation, his claim was meritless. He now states that the evidence was insufficient to support his conviction.

The Magistrate Judge properly found that Brown's claim was meritless. As indicated in the Report, claims of actual innocence do not state a basis for federal habeas corpus relief absent an independent constitutional violation. *See Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013); *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Because Brown failed to present a constitutional violation, his claim of actual innocence fails.

An otherwise free-standing claim of actual innocence—if based on newly discovered evidence–can be raised in state court. *Ex parte Franklin*, 72 S.W.3d 671, 677-78 (Tex.Crim.App. 2002). However, a claim based on newly discovered evidence requires the defendant to support his allegations of constitutional error with new, reliable science that was not presented at trial. *See Schlup v. Delo*, 513 U.S. 298, 328 (1995). Here, Brown failed to highlight any newly discovered evidence. Therefore, his claim of actual innocence fails.

**V. Conclusion**

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the United States Magistrate Judge is correct and the Petitioner's objections are without merit. Accordingly, it is

**ORDERED** that the Petitioner's objections, (Dkt. #40), are overruled and the Report of the Magistrate Judge, (Dkt. #33), is **ADOPTED** as the opinion of the District Court. Furthermore, it is

**ORDERED** that the above-styled application for the writ of habeas corpus is **DISMISSED WITH PREJUDICE**. It is also

**ORDERED** that the Petitioner Larey Douglas Brown is **DENIED** a certificate of appealability *sua sponte*. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

**So Ordered and Signed**
**Sep 26, 2017**

_____
Ron Clark, United States District Judge